IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DANIEL SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:11-1055 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| CHASE BANK USA, N.A., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM

Plaintiff, Daniel Smith, a Tennessee citizen, filed this pro se action under 28 U.S.C. 1331, the federal question statute, and 28 U.S.C. § 2201, the Declaratory Judgment Act, against Defendant Chase Bank USA, N.A. ("Chase"), a Delaware corporation doing business in Tennessee and the issuer of Plaintiff's credit card. The gravamen of Plaintiff's claim is that under his 2005 credit card agreement ("original agreement") account disputes between Plaintiff and Defendant must be resolved by arbitration. In a related action, Chase Bank USA, N.A. v. Daniel Smith, No. 3:11-cv-1065, Chase filed a declaratory judgment action, asserting that Plaintiff is not entitled to arbitration; that a 2010 cardmember agreement ("amended agreement") applies to account disputes between Plaintiff and Chase; and that Delaware state law applies to this action. The Court consolidated these actions.[1]

Before the Court is Plaintiff's motion for summary judgment (Docket Entry No. 8)[2] contending, in essence: (1) that the original agreement applies to the account disputes between

---
[1] See Daniel Smith v. Chase Bank USA, N.A., No. 3:11-cv-1055 (Docket Entry No. 11) and Chase Bank USA, N.A. v. Daniel Smith, No. 3:11-cv-1065 (Docket Entry No. 13).
[2] Unless stated otherwise herein, all docket entry citations are to filings in the lead action, Smith v. Chase Bank USA, N.A., No. 3:11-cv-1055.

1

the parties and under that agreement, disputes between the parties must be arbitrated; (2) that the original agreement is ambiguous, and therefore should be construed against Defendant; (3) that Plaintiff never consented to the purported amended agreement that does not apply in this action; (4) that the original agreement precludes the Defendant from removing the arbitration clause; and (5) that public policy favors arbitration.

In its response and cross-motion for summary judgment (Docket Entry Nos. 14 and 15) Chase contends, in sum: (1) that under the terms of the original agreement, and as a matter of law, Defendant may unilaterally amend the original agreement; (2) that Plaintiff's interpretation of the original agreement with the arbitration clause is unreasonable; (3) that an arbitration agreement does not exist between the parties because the arbitration clause was removed as part of a federal class action settlement; and (4) that the amended agreement applies in this action.

Also, before the Court is Plaintiff's motion to dismiss Chase's action (No. 3:11-cv-1065, Docket Entry No. 8), contending, in essence: (1) that the amended agreement cannot apply to this action because the account was closed prior to issuance of the amended agreement; (2) that Plaintiff did not consent to the amended agreement (3) that the original agreement is invalid for lack of consideration; (4) that Plaintiff did not accept the terms of the amended agreement because he did not use the credit card after his account was closed in 2007; and (5) that Chase's claim must be dismissed for judicial economy as it is dependent on the same factual issues as Plaintiff's claim.

In its response, (No. 3:11-cv-1065, Docket Entry No. 10), Chase asserts, in sum: (1) that its complaint states a claim for declaratory relief; (2) that the arbitration clause was removed as part of a federal class action settlement between Chase and its cardmembers; (3) that Chase may unilaterally amend the original agreement without Plaintiff's consent; (4) that under Delaware

2

law Chase may amend the cardmember agreement on a closed account; (5) that because Plaintiff had a balance in early 2010, the amended agreement applies to Plaintiff's account; (6) that Chase may unilaterally amend the original agreement despite its arbitration survival clause; and (7) that the amended agreement applies to this controversy.

For the reasons set forth below, the Court concludes that the parties' declaratory judgment actions No. 3:11-cv-1055 and No. 3:11-cv-1065 should be dismissed without prejudice for lack of subject matter jurisdiction, as the New York district court retained exclusive jurisdiction over the parties' disputes. Thus, the Court also concludes that the parties' motions should be denied as moot.

## A. Review of the Record[3]

In December 2005, Plaintiff opened a Chase credit card account with Defendant. (Docket Entry No. 19, Plaintiff's Response to Defendant's Statement of Undisputed Facts, at ¶ 1). The original agreement contains an arbitration clause:

> **Claims Covered.** Either [party] may, without the others consent, elect mandatory, binding arbitration or any claim, dispute, or controversy by either [party] against the other…arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account ("Claim"). This Arbitration Agreement governs all Claims, whether such claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as…injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. This Arbitration Agreement includes Claims that arose in the past, or arise in the present or the future. As

---

[3] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Because there are not any material factual disputes, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

3

used in this Arbitration Agreement, the term Claim is to be given the broadest possible meaning.

Claims subject to arbitration include Claims that are made as counterclaims, cross claims, third party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any such Claims advanced in the lawsuit by any party or parties.

(Docket Entry No. 1, Exhibit 1 at 4).

The original agreement also contains a survival clause that provides as follows:

**Severability, survival.** This Arbitration Agreement shall survive: (i) termination or changes in the Cardmember Agreement, the Account and the relationship between [the parties] concerning the Account, such as the issuing of a new account number or the transferring of the balance in the Account to another account; (ii) the bankruptcy of any party or any similar proceeding initiated by [the cardmember or the cardmember's] behalf; and (iii) payment of the debt in full by you or by a third party. If any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

Id. at 5.

For any amendment of this account, the agreement contains an amendment clause, providing as follows:

**CHANGES TO THIS AGREEMENT**
We can change this agreement at any time, regardless of whether you have access to your account, by adding, deleting, or modifying any provision. Our right to add, delete, or modify provisions includes financial terms, such as the APRs and fees, and other terms such as the nature, extent, and enforcement of the rights and obligations you or we may have relating to this agreement. Modifications, additions, or deletions are called "Changes" or a "Change".
We will notify you or any Change if required by applicable law. These Changes may be effective with notice only, at the time stated in our notice, in accordance with applicable law. Unless we state otherwise, any Change will apply to the unpaid balances on your account and to new transactions.
The notice will describe any rights you may have with respect to any Change, and the consequences if you do or do not exercise those rights. For example, the notice may state that you may notify us in writing by a specified date if you do not want to accept certain Changes we are making. If you notify us in writing that you do not accept the Changes, your account may be closed (if it is not already closed) and you will be obligated to pay our outstanding balance under the applicable terms of the agreement. If you do not notify us in writing by the date stated in the notice, you will be deemed to accept all Changes in

4

the notice and to accept and confirm all terms of your agreement and all Changes in prior notices we have sent you regardless of whether you have access to your account.

Id.

Finally, the agreement contains a choice of law clause:

**GOVERNING LAW**
THE TERMS AND ENFORCEMENT OF THIS AGREEMENT AND YOUR ACCOUNT SHALL BE GOVERNED AND INTERPRETED IN ACCORDANCE WITH FEDERAL LAW AND, TO THE EXTENT STATE LAW APPLIES, THE LAW OF DELAWARE, WITHOUT REGARD TO CONFLICT-OF-LAW PRINCIPLES. THE LAW OF DELAWARE, WHERE WE AND YOUR ACCOUNT ARE LOCATED, WILL APPLY NO MATTER WHERE YOU LIVE OR USE THE ACCOUNT.

Id.

In January 2007, Chase notified Plaintiff of the changes to the agreement and Plaintiff's right to opt-out. (Docket Entry No. 19 at ¶ 4). Unless Plaintiff elected opted-out by notifying Defendant in writing by March 22, 2007, the effective date of the new agreement was April 1, 2007. Id.; Docket Entry No. 16, Ford Affidavit at ¶ 3, Exhibit 2. Plaintiff notified Chase by letter dated February 20, 2007 that he elected to opt-out of the new agreement. Id. at ¶ 5. After receiving the letter, Defendant closed Plaintiff's account to new purchases. Id. at ¶ 6. Plaintiff, however, continued to maintain a balance and made payments on the account until October, 2011. Id. at ¶ 7.

In early 2010, Chase agreed to remove and cease enforcing the arbitration clause from cardmember agreements as part of a federal class action settlement.[4] (No. 3:11-cv-1065, Docket Entry No. 10-1, Final Judgment and Order of Dismissal at ¶¶ 2,7). To comply with the federal rules of civil procedure and due process, the New York district required the settlement notice to include a notice of the removal of the arbitration clause. Id. at ¶ 5. The New York district court

---

[4] In re Currency Conversion Fee Antitrust Litigation, No. MDL 1409, No. M 21-95 (S.D.N.Y. Jul. 22, 2010) (final judgment and order of dismissal requiring removal of arbitration clauses).

5

also "reserve[d] exclusive personal and subject matter jurisdiction over the implementation and enforcement of the Settlement Agreements and this Final Judgment and Order of Dismissal, including, but not limited to, any disputes relating to or arising out of the Released Claims". Id. at ¶ 13.

In early 2010, Chase mailed Plaintiff notice of the amended agreement that included a removal of the arbitration clause effective February 22, 2010. (Docket Entry No. 16, Ford Affidavit at ¶ 6, Exhibit 4; Docket Entry No. 17, Morgan Affidavit at ¶¶ 2-5). Plaintiff, however, contends that he does not recall receiving the amended agreement, nor notice of any changes to the agreement, including the removal of the arbitration clause. (Docket Entry No. 1, Exhibit B attached thereto, Smith Affidavit at ¶ 4).

On or about October 4, 2011, Plaintiff paid the remaining balance of his account. (Docket Entry No. 13, Defendant's Response to Plaintiff's Statement of Undisputed Facts, at ¶¶ 6-7). On or about October 12, 2011, Plaintiff also filed a demand for arbitration, alleging that he did not receive full credit for an account payment made on June 16, 2011. (Docket Entry No. 19 at ¶ 15; 3:11-cv-1065, Docket Entry No. 1 at ¶ 6, Exhibit A).

### B. Conclusions of Law

"[F]ederal courts are courts of limited jurisdiction, empowered only to wield the power Congress and the Constitution have given them…'Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" United States v. Lucido, 612 F.3d 871, 877 (6th Cir. 2010). "Federal Rule of Civil Procedure 12(h)(3) states that whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss

6

the action." Marks v. Tennessee, Civil No. 1:07-0095, 2008 WL 4372764, at *4 (M.D.Tenn. Sept. 18, 2008) (citing Fed. R. Civ. Pro. 12(h)(3)).

As an initial matter, the Court is "'under a continuing obligation to verify [its] jurisdiction over [this action].'" East Brooks Books, Inc. v. City of Memphis, 633 F.3d 459, 464 n.3 (6th Cir. 2011) (citation omitted). "'The existence of subject matter jurisdiction may be raised at any time, by any party, or even sua sponte by the court itself.'" Id. (citation omitted). Further, "[a]ny court may address the issue of subject matter jurisdiction at any time, with or without the issue being raised by a party to the action." Cmty Health Plan of Ohio v. Mosser, 347 F.3d 619, 622 (6th Cir. 2003) overruled on other grounds by Primax Recoveries, Inc. v. Gunter, 433 F.3d 515 (6th Cir. 2006) (citation omitted).

Here, the parties assert that the Court has subject matter and personal jurisdiction. (Docket Entry No. 1 at ¶ 1; No. 3:11-cv-1065, Docket Entry No. 1 at ¶¶ 3-5). Yet, "[n]o action of the parties can confer subject matter jurisdiction upon a federal court, and jurisdiction cannot be conferred through the principles of consent, waiver, or estoppel." McClinton v. Vickers Corp., No. 92-1927, 995 F.2d 1067, 1993 WL 191883, at *1 (6th Cir. Jun. 7, 1993) (citation omitted); Martens v. Smith Barney, Inc., 181 F.R.D. 243, 251 (S.D.N.Y. 1998) ("'[T]hat defendant did not raise the defense of subject matter jurisdiction is not determinative, since subject matter jurisdiction cannot be waived and the issue can be raised at any time in the course of litigation.'") (citation and brackets omitted).

"A class action settlement, like an agreement resolving any other legal claim, is a private contract negotiated between the parties." Christina A. ex rel. Jennifer A. v. Bloomberg, 315 F.3d 990, 992 (8th Cir. 2003) (quoting 5 Moore's Federal Practice § 23.82[1] (3d ed. 2000)) (second emphasis added). Yet, for a private agreement, the court can retain jurisdiction to enforce the

7

settlement agreement and to conduct any further proceedings after a final order. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 381-82 (1994); accord Hehl v. City of Avalon Lake, 90 Fed.Appx. 797, 800-801 (6th Cir. 2004) ("a district court does have the authority to dismiss the pending claims while retaining jurisdiction over the future enforcement of a settlement agreement…'if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal – either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the agreement in the order.'") (quoting Kokkonen, 511 U.S. at 381) (citation omitted).

As applied here, in the class action the New York district court's final order expressly reserved its jurisdiction over any disputes under Chase's settlement agreement.

> CLASS: All Persons holding during the Period in Suit a Credit Card under a United States Cardholder Agreement with any of the Bank Defendants [including Defendant Chase] (including, among other cards, cards originally issued under the MBNA, Bank One, First USA and Providian brands), but not including members of the proposed Subclass, subject to an arbitration provision relating to their cards….

(No. 3:11-cv-1065, Docket Entry No. 10-1, attachment thereto, Final Judgment and Order of Dismissal at ¶ 2) (footnote omitted). The scope of claims released by the settlement agreement in the notice of proposed settlement approved by the district court is as follows:

> If approved, the settlement will bind you. It releases the settling defendants from all liability stemming from the adoption or inclusion of the arbitration clauses and class action bans in the terms they require of their consumer and small business credit card cardholders. The settling defendants are NOT being released from any claim for money damages that may allegedly arise from the invocation or enforcement of their arbitration clauses and class action bans.

Id. at 4,10. (emphasis in original).

The New York district court also expressly "reserve[d] exclusive personal and subject matter jurisdiction over the implementation and enforcement of the settlement

8

Agreements ...including, but not limited to, any disputes arising out of the Released Claims". (No. 3:11-cv-1065, Docket Entry No. 10-1, attachment thereto, Final Judgment and Order of Dismissal at ¶ 13). Thus, the Court concludes that under Kokkonen, the New York district court has jurisdiction and subject matter jurisdiction does not exist in this district.

Plaintiff in this action alleges that he did not receive notice of the settlement agreement and that he is therefore not bound by the terms of settlement. (No. 3:11-cv-1055, Docket Entry No. 1, Exhibit B, Smith Affidavit at ¶ 4). In response, Defendant asserts that the settlement agreement binds Plaintiff and precludes him from arbitrating his claim. (Docket Entry No. 15 at ¶¶ 8-9). Plaintiff's allegation is similar to allegations made by the plaintiffs in Magnolia v. Conn. Gen. Life Ins. Co., 157 F. Supp. 2d 583, 587 (D.Md. 2001).

In Magnolia, the plaintiffs asserted a negligent misrepresentation claim against the defendant in Maryland federal court. Magnolia v. Conn. Gen. Life Ins. Co., 157 F. Supp. 2d 583, 584 (D.Md. 2001). The defendant alleged that the plaintiffs' claims were similar to settled claims in a related federal class action lawsuit where the California district court "retained jurisdiction 'as to all matters' relating to the 'enforcement and interpretation' of the settlement agreement and the Final Order itself." Id. As here, the Magnolia plaintiffs alleged that they did not receive notice of the proposed settlement, did not have an opportunity to file a claim in the class action, and did not receive notice of their right to do so. Id. at 585. The Maryland court concluded that the plaintiffs' claims were similar to those asserted in the California class action and dismissed the Maryland action. Id. at 586. The Magnolia court noted:

> It is apparent from language of the Final Order that the California Court intended to retain exclusive jurisdiction over issues like the one presented in this case. Assuredly, the California Court rather than this Court is the proper forum for determining whether parties like the Magnolias received proper notice and were therefore bound by the settlement. It would make no sense for the California Court to retain jurisdiction to

9

> interpret and apply its own judgment but permit another court to construe what it meant in that judgment. See Flanagan v. Arnaiz, 143 F.3d 540, 545 (9th Cir.1998).
>
> Plaintiffs must therefore pursue their suit against Connecticut General in the Central District of California which has retained for itself jurisdiction to determine whether the requirements of Rule 23 have been satisfied. Pursuant to Rule 23(d)(2), it was [the California Court judge] who entered appropriate orders in the [related class action] litigation setting forth the manner in which notice of the settlement was to be given to members of the class. Since jurisdiction was retained by the California Court as to all matters relating to the administration and enforcement of the Settlement Agreement, it is the California Court which should determine whether the Magnolias received proper notice and whether they are bound by provisions of the Final Order.
>
> Plaintiffs argue that if their pending complaint is dismissed for lack of subject matter jurisdiction, they will have been denied their due process right to contest the applicability to them of provisions of the Final Order. But no such denial will occur if defendant's pending motion to dismiss is granted. As this Court has here recognized, plaintiffs have the right to present to the California Court their claim that they are not bound by the settlement reached in the [related class action] litigation. If plaintiffs received actual notice of or were properly apprised of the [class action] litigation in some other way, they are barred from pursuing their claim of negligent misrepresentation in this or any other court. On the other hand, if it is determined by the United States District Court for the Central District of California that the Magnolias never received proper notice of the class action litigation and were never notified of their right to opt out of the settlement, then plaintiffs would be entitled to sue Connecticut General in this or any other appropriate jurisdiction.

Id. at 587 (emphasis added); see also Bar Codes Talk, Inc. v. GS1 US, Inc., No. 8:10-cv-1462-T-30MAP, 2010 WL 4510982, at *2 (citing Magnolia, 157 F. Supp. 2d at 587 and noting that several federal district courts "support the notion that a district court may dismiss an action where, as here, [another] court retains exclusive jurisdiction over a settlement agreement.").

Here, the New York district court in this action retained exclusive subject matter jurisdiction over the settlement agreement. (3:11-cv-1065, Docket Entry No. 10-1, attachment thereto, at ¶ 13). That agreement concerned the removal of arbitration clauses from cardmember agreements similar to the arbitration clause in the original agreement that Plaintiff here seeks to enforce. Id. at ¶¶ 2,7. The parties' claims concern whether the arbitration clause of the original

10

agreement is effective. This action is similar to the plaintiffs in Magnolia. Thus, this Court concludes that the New York district court is the proper forum to "determine whether the [Plaintiff] received proper notice and whether [he is] bound by provisions of the Final Order." Magnolia, 157 F. Supp. 2d at 587. Thus, the Court concludes that the declaratory judgment actions of both Plaintiff and Defendant should be dismissed, "without prejudice to the right of [the parties] to pursue their claims in the United States District Court for the [Southern District of New York]." Id. at 588.

Plaintiff next contends, in essence, that this action is a contract dispute to determine whether Plaintiff accepted the terms of the amended agreement. (No. 3:11-cv-1065, Docket Entry No. 9 at 3-6). Plaintiff avers that because the account was closed to new purchases in 2007, Plaintiff was unable to make new charges to the account. Id. at 4. As a result, Plaintiff argues that consideration did not exist because the amended agreement neither imposed any detriment on Defendant nor conferred any benefit on Plaintiff. Id. at 5. Further, Plaintiff asserts that consent between the parties to amend the 2005 agreement is lacking because Plaintiff did not use the credit card after the alleged change of the agreement. Id. at 5-6.

In a similar action where a plaintiff filed a claim in state court, relating to claims previously settled in a federal class action, the Sixth Circuit stated:

> The fact that this federal case involves a complex class settlement also provides an additional reason why the district court's injunction against the state-court litigation is proper. For "[i]t is now settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim was not presented, and could not have been presented, in the class action itself." In re Prudential Ins. Co. of Am. Sales Practice Litig., 261 F.3d 355, 366 (3d Cir. 2001); see also Moulton v. U.S. Steel Corp., 581 F.3d 344, 349 (6th Cir. 2009) (explaining that, in a fairness review of the release of future claims in a class settlement, "[t]he question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the

11

released claims share a factual predicate with the claims pled in the complaint" (citation and internal quotation marks omitted)).

Part of the justification for this principle is that a class action is "analogous to ... an in rem action ..., where it is intolerable to have conflicting orders from different courts." In re Baldwin–United Corp. (Single Premium Deferred Annuities Ins. Litig.), 770 F.2d 328, 337 (2d Cir.1985) (citation omitted); see also Battle v. Liberty Nat'l Life Ins. Co., 877 F.2d 877, 882 (11th Cir.1989) (reasoning that a "lengthy, complicated litigation is the virtual equivalent of a res" (citation and internal quotation marks omitted)).

Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, 589 F.3d 835, 848 (6th Cir. 2009).

Class actions "vindicat[e] the rights of individuals who otherwise ought not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." Gulf Oil Co. v. Bernard, 452 U.S. 89, 99 n.11 (1981) (quoting Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 338 (1980)). A class action concentrates the litigation in one forum and avoids inconsistent adjudications, thereby advancing "the efficiency and economy of litigation which is a principal purpose of the procedure." Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 553 (1974). Thus, "[a]bsent a violation of due process or excusable neglect for failure to timely opt out, a class action agreement binds all class members who did not do so." In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 129 (2nd Cir. 2011). Any judgment in such an action operates as res judicata against the claims of any other class member. Duncan v. State of Tenn., 84 F.R.D. 21, 27 (M.D. Tenn. 1979). Thus, the New York district court must determine whether "[Plaintiff's] entitlement to arbitrate disputes with [Defendant]...does not extend to the Released Claims as defined by the Settlement Agreement...." In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d at 133.

Thus, even if Plaintiff's claim could not have been presented at the time of the class action settlement, Plaintiff is precluded from bringing this action now. Moreover, even if Plaintiff's or Defendant's claims do not perfectly overlap the claims released in the settlement

12

agreement, they share a factual predicate with the released claims: Plaintiff's claim concerns the enforcement of the arbitration clause, while Defendant's claim concerns enforcement of the settlement agreement removing that clause. Thus, the Court concludes that Plaintiff's and Defendant's declaratory judgment actions in this district are precluded by the New York district court's judgment and should be dismissed without prejudice for lack of subject matter jurisdiction.

For the reasons stated above, the Court concludes that the complaints for declaratory judgment in No. 3:11-cv-1055 (Docket Entry No. 1) and No. 3:11-cv-1065 (Docket Entry No. 1) should be dismissed without prejudice for lack of subject matter jurisdiction. All motions in No. 3:11-cv-1055 and No. 3:11-cv-1065 should be denied as moot.

An appropriate Order is filed herewith.

**ENTERED** this the ___ day of May, 2012.

WILLIAM J. HAYNES, JR.
United States District Judge

13